IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERWIN REDDING, | : | Civil No. 3:15-cv-1047 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| R. BILINSKI, | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Erwin Redding ("Redding"), an inmate formerly housed at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"),commenced this *Bivens*[1], 28 U.S.C. § 1331, civil rights action on May 29, 2015. (Doc. 1). The matter is proceeding via an amended complaint wherein Redding names correctional officer R. Bilinski as the sole Defendant. (Doc. 9).

Presently pending before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 18). For the following reasons, the motion for summary judgment will be granted.

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

## I. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."

2

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## II. <u>Allegations of the Amended Complaint</u>

Redding's entire statement of claim is as follows:

> On January 27, 2014 c/o Bilinski slammed me on the floor of the shower room of B-Block while I was handcuffed behind my back. He made racial comments & slurs and summoned other unidentified officers to assist in assaulting me by punching, kicking, and choking me while I lay on the floor.

(Doc. 9, pp. 2-3).

## III. Statement of Undisputed Facts

Rule 56 of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). Similarly, Middle District of Pennsylvania Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. PA. L.R. 56.1. Redding failed to file a responsive statement of facts as required by the Federal Rule of Civil Procedure 56(e)(2) and Local Rule 56.1. Thus, the undisputed facts, taken from Defendant's statement of material facts, (Doc. 19, Statement of Material Facts ("SMF")), and the exhibits submitted therewith, are as follows.

On January 27, 2014, an immediate, unplanned emergency use of force was performed after Redding became violent and assaultive in the shower area of the Special Management unit at USP-Lewisburg. (Doc. 19, SMF, ¶ 4; Doc. 19-1, p. 3, Declaration of Jonathan Kerr ("Kerr Decl."), ¶ 3). Officer Robert Bilinski entered the shower area to return Redding to his assigned cell and applied hand restraints. (Doc. 19, ¶ 5; Doc. 19-1, p. 3, Kerr Decl. ¶ 3). When Bilinski unlocked the shower, Redding kicked the shower door,

4

striking Bilinski in the chest. (Doc. 19, ¶ 6; Doc. 19-1, p. 3, Kerr Decl. ¶ 3). Redding then charged Bilinski and struck him in the chest with his left shoulder. (Doc. 19, ¶ 7; Doc. 19-1, p. 3, Kerr Decl. ¶ 3). Bilinski then activated his body alarm and regained control of Redding on the floor. (Doc. 19, ¶ 8; Doc. 19-1, p. 3, Kerr Decl. ¶ 3). Redding proceeded to kick and spit on Bilinski until other staff members responded to the situation. (*Id.*).

After the incident, Redding was examined by medical staff and reported no injuries. (Doc. 19, ¶ 9; Doc. 19-1, p. 3, Kerr Decl. ¶ 3). The comprehensive medical assessment revealed that Redding sustained two small abrasions on his forehead. (*Id.*).

As a result of the January 27, 2014 incident, Redding was charged in Incident Report Number 2541904, with violation of Code 224, Assaulting any Person. (Doc. 19, ¶ 10; Doc. 19-1, p. 3, Kerr Decl. ¶ 3). On March 12, 2014, a Discipline Hearing Officer ("DHO") conducted a hearing. (Doc. 19, ¶ 11; Doc. 19-1, p. 3, Kerr Decl. ¶ 3). The DHO ultimately found that Redding committed the prohibited act as charged and imposed sanctions of 27 days disallowance of good conduct time, forfeiture of 13 days non-vested good conduct time, 60 days in disciplinary segregation, and 18 months loss of commissary, telephone, and visiting privileges. (Doc. 19, ¶¶ 11, 13; Doc. 19-1, p. 3, Kerr Decl. ¶ 3; Doc. 19-1, pp. 35-36).

The DHO documented his findings as follows:

> The DHO finds inmate Redding committed the prohibited act of Assault, Code 224. This finding is based upon the eyewitness written account of the

> reporting officer, which indicates on 01-27-2014 at 9:02 am, while conducting the shower program, the reporting officer entered the B-Block 1st floor shower to return inmate Redding, # 06434-087, from the shower back to cell B-216. The reporting officer placed inmate Redding in hand restraints and double locked them. The reporting officer then unlocked the shower at which time inmate Redding kicked the shower door which struck the reporting officer in the chest. Inmate Redding then turned and charged the reporting officer striking the reporting officer in the chest with his left shoulder. The reporting officer then placed inmate Redding on the floor with the least amount of force necessary to regain control of the inmate and activated the reporting officer's body alarm. Inmate Redding continued to resist the reporting officer's orders to cease his actions while he continued to kick and spit at the reporting officer. The reporting officer was then relieved by responding staff. The reporting officer sustained no injuries and lost no equipment.
>
> This finding is further based on the fact inmate Redding declined to appear at the DHO hearing, declined to make any statement of any sort, and did not provide the DHO with any documentary evidence to review. These facts provide an adverse inference that inmate Redding committed the prohibited act as charged. The DHO has determined that if inmate Redding believed he did not commit the prohibited act as charged, he would have appeared before the DHO, specifically denied committing the prohibited act charged, and presented some sort of defense to the charge.
>
> The evidence in this case, therefore, supports the finding inmate Redding committed the prohibited act of Assault, Code 224.

(Doc. 19, ¶ 12; Doc. 19-1, p. 35, DHO Report).

On October 4, 2016, a search of the BOP's administrative remedy records was conducted to determine whether Redding exhausted his excessive use of force claim. (Doc. 19, ¶ 23). The search revealed that Redding filed a total of seven administrative remedies while in BOP custody. (Doc. 19, ¶ 24; Doc. 19-1, p. 4, Kerr Decl. ¶ 6). Redding never filed an Administrative Remedy regarding the January 27, 2014 incident. (Doc. 19, ¶

6

25; Doc. 19-1, p. 4, Kerr Decl. ¶ 6). However, Redding attempted to appeal the DHO's finding of guilt and imposition of sanctions related to the January 27, 2014 incident. (*Id.*). On March 26, 2014, Redding filed Administrative Remedy Number 773331-R1 with the BOP's Northeast Regional Office, appealing unidentified DHO sanctions. (Doc. 19, ¶ 26; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval). On March 28, 2014, the Regional Office rejected the appeal because Redding did not provide a copy of the DHO report and did not otherwise identify the charges and date of the DHO action he was appealing. (Doc. 19, ¶ 27; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval). Redding was advised that he could resubmit the appeal in proper form within ten days of the date on the rejection notice. (Doc. 19, ¶ 28; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval). The record reveals that Redding did not refile the remedy or pursue the remedy any further. (Doc. 19, ¶ 29; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval).

On April 16, 2014, Redding filed Administrative Remedy Number 775878-R1 with the Northeast Regional Office, regarding "DHO Appeal Code 224 Hearing 3/12/14." (Doc. 19, ¶ 30; Doc. 19-1, p. 4, Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval). On April 17, 2014, the Regional Office rejected the appeal because Redding did not submit a complete set of the appeal form. (Doc. 19, ¶ 31; Doc. 19-1, p. 4,

Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval). The rejection notice advised Redding that "all four pages of the BP-10 must be legible[,] pages 3 & 4 are blank." (Doc. 19, ¶ 31; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval). Redding was advised that he could resubmit the appeal in proper form within five days of the date of the rejection notice. (Doc. 19, ¶ 32; Doc. 19-1, p. 4, Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval). Redding did not refile the remedy or pursue the remedy any further. (Doc. 19, ¶ 33; Doc. 19-1, p. 4, Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval).

## IV. Discussion

Defendant seeks dismissal of the amended complaint, or an entry of summary judgment, on the following grounds: (1) Redding failed to exhaust administrative remedies prior to filing suit; (2) Redding's excessive force claim is barred by the Favorable Termination Rule; (3) Redding failed to sufficiently allege a claim of excessive use of force; and, (4) Defendant is entitled to qualified immunity. (Doc. 20). The Court finds that Defendant's argument regarding failure to exhaust administrative remedies is dispositive of the motion, thus the alternative arguments need not be addressed. *See Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2010) ("exhaustion is a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time") (internal citation omitted).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or

improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

The Federal Bureau of Prisons has an administrative remedy procedure through which inmates can seek formal review of an issue relating to any aspect of his or her confinement. 28 C.F.R. § 542.10(a). In order to exhaust appeals under the administrative review procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. 28 C.F.R. § 542.13(a). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident. 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP. 28 C.F.R. § 542.15(a). No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. 28 C.F.R. § 542.15(a). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection. 28 C.F.R. § 541.17(b).

However, appeals of DHO decisions are first submitted directly to the BOP Regional Office and then to the BOP Central Office. 28 C.F.R. § 542.14(d)(2) (providing that "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located").

In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates. On or about October 4, 2016, a search of BOP records was conducted to determine whether Redding exhausted his excessive use of force claim. (Doc. 19, ¶ 23; Doc. 19-1, pp. 11-15, Administrative Remedy Generalized Retrieval). As stated, this review revealed that Redding filed a total of seven administrative remedies while in BOP custody. (Id.).

The record establishes that Redding never filed an Administrative Remedy regarding the January 27, 2014 incident. (Doc. 19, ¶ 25; Doc. 19-1, p. 4, Kerr Decl. ¶ 6). Redding has provided no evidence to dispute this fact.

Redding attempted to appeal the DHO's finding of guilt and imposition of sanctions related to the January 27, 2014 incident. (Doc. 19, ¶ 25; Doc. 19-1, p. 4, Kerr Decl. ¶ 6). On March 26, 2014, Redding filed Administrative Remedy Number 773331-R1 with the BOP's Northeast Regional Office, appealing unidentified DHO sanctions. (Doc. 19, ¶ 26; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval). The Regional Office rejected the appeal because Redding did not provide a

copy of the DHO report and did not identify the charges and date of the DHO action he was appealing. (Doc. 19, ¶ 27; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval). Redding was directed to resubmit the appeal in proper form. (Doc. 19, ¶ 28; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval). The record reveals that Redding did not refile the remedy or pursue the remedy any further. (Doc. 19, ¶ 29; Doc. 19-1, p. 4, Kerr Decl. ¶ 6; Doc. 19-1, p. 12, Administrative Remedy Generalized Retrieval).

On April 16, 2014, Redding filed Administrative Remedy Number 775878- R1 with the Northeast Regional Office, regarding "DHO Appeal Code 224 Hearing 3/12/14." (Doc. 19, ¶ 30; Doc. 19-1, p. 4, Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval). The appeal was rejected because Redding did not submit a complete set of the appeal form. (Doc. 19, ¶ 31; Doc. 19-1, p. 4, Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval). Redding was directed to resubmit the appeal in proper form. (Doc. 19, ¶ 32; Doc. 19-1, p. 4, Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval). Once again, Redding did not refile the remedy or pursue the remedy any further. (Doc. 19, ¶ 33; Doc. 19-1, p. 4, Kerr Decl. ¶ 7; Doc. 19-1, p. 13, Administrative Remedy Generalized Retrieval).

Rather than comply with the directives of the Regional Office, Redding chose to abandon his appeals. Redding fails to set forth any claims that prison officials obstructed

his attempt to exhaust the administrative remedy process. Nor does he present any facts or evidence that his efforts to utilize the administrative review process were impeded in any manner. Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. *See Todd v. Benning*, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, *see Harcum v. Shaffer*, 2007 WL 4167161, at *5 (E.D. Pa. 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, *see Mitchell v. Horn*, 318 F3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, *see Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, *see Camp*, 219 F.3d at 280-81 (finding that administrative remedies

were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers). There is no indication, based upon the evidence and review of the Administrative Remedy Generalized Retrieval Information, that Redding was prevented or hindered from pursing administrative remedies. In fact, during his incarceration, Redding filed several grievances and administrative remedies, which would undermine any assertion that he was obstructed from seeking administrative relief.

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Redding has failed to meet his burden with respect to the administrative exhaustion of his present claims. Defendant is therefore entitled to an entry of summary judgment in his favor.

Moreover, it is well-established that administrative remedies must be exhausted prior to the initiation of suit. *See Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit, including a *Bivens* action."); *Millbrook v. United States*, 8 F.Supp.3d 601, 611 (M.D. Pa. 2014)

("Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. '[E]xhaustion must occur prior to filing suit, not while the suit is pending.'") (citations omitted). The Third Circuit recognizes a "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). An inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368. The Third Circuit has recently stated that the institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, No. 14-2994, 2016 WL 4010438, at *5 (3d Cir. 2016). Unlike *Robinson*, there are no allegations in the instant matter that the institution delayed in responding to any grievances or repeatedly ignored requests for a decision on grievances. Redding failed to present any evidence that he was he misled by prison officials, was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the grievance process. *Banks v. Roberts*, 2007 WL 1574771, at *5 (M.D. Pa. 2007) (holding that while the plaintiff alleged that the

15

defendants "obstructed" his efforts to pursue administrative remedies by refusing to provide proper forms and instructing others not to provide the necessary forms, the grievance process was available to him, and therefore, plaintiff's claim was procedurally defaulted for failure to comply with the process).

## V.     Conclusion

Based on the foregoing, Defendant's motion for summary judgment will be granted. A separate order shall issue.

Date: June 22, 2017

Robert D. Mariani
United States District Judge